Rachel Flinn, Esq. #027000
3838 N. Central Ave., Ste. 800
Phoenix, Arizona 85012
(602) 277-8996
(602) 253-8346, facsimile
Attorney for Russell Brown, Chapter 13 Trustee

# IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF ARIZONA

| In re: | In Proceedings Under Chapter 13 |
|---|---|
| PATRICIA ANN KERRIDAN, | Case No. 2:16-bk-14640-BKM |
| | **MOTION TO SELL PROPERTY FREE AND CLEAR OF LIENS AND MOTION TO APPROVE COSTS AND FEES** |
| Debtor. | |

Russell A. Brown, Chapter 13 Trustee (hereinafter the "Trustee" or "Seller") pursuant to 11 U.S.C. § 363, by and through undersigned counsel, moves this Court for an Order approving the sale of the bankruptcy estate's interest in non-exempt real property located at 12430 S. Moody, Palos Heights, Illinois 60463 ("the Property") free and clear of liens and encumbrances pursuant to 11 U.S.C. § 363 (b) and (f).

This motion is based on the attached Memorandum of Points and Authorities.

Wherefore, the Trustee requests the Court approve the sale of the Estate's interest in the Property.

RUSSELL A. BROWN,
CHAPTER 13 TRUSTEE


By: _____
Rachel Flinn, Esq. ABN 027000
Staff Attorney for Chapter 13 Trustee
RFlinn@ch13bk.com

## MEMORANDUM OF POINTS AND AUTHORITIES

### A.      JURISDICTION AND BACKGROUND

1.      This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§157 and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      On December 30, 2016, Patricia Ann Kerridan ("Debtor") filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code ("Petition Date").

3.      Debtor's Schedule A discloses her legal interest in the Property located at 12430 S. Moody, Palos Heights, Illinois 60463,   Parcel Number 24-29-310-006-0000, and  more particularly described as follows:

> SITUATED IN THE COUNTY OF COOK AND STATE OF ILLINOIS:
> LOT 76 IN AUSTIN VIEW ADDITION, A SUBDIVISION OF
> PART OF THE EAST HALF OF THE SOUTHWEST QUARTER
> OF SECTION 29, TOWNSHIP 37 NORTH, RANGE 13, EAST
> OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY,
> ILLINOIS.

4.      The Debtors' interest in the Property is non-exempt.  Pursuant to 11 U.S.C. § 541, the Debtors' interest in the Property is property of the Debtors' bankruptcy estate ("Bankruptcy Estate").

5.      Russell Brown is the duly appointed Chapter 13 Trustee.

### B.      SUMMARY OF THE PROPOSED SALE

6.      The Trustee has received an offer from Michael P. Barry & Rita D. Barry, (the "Buyers") to purchase the estate's interest in the Property for $178,000.00. The Buyers and the Seller have agreed that each party shall pay their own customary closing costs.  The Purchase Price shall be paid in full with certified funds at close of escrow.   Buyers have deposited $2,000.00 earnest money, currently held in escrow with JP Title. The Trustee has accepted the offer. Due to the fact that the home is being sold in "as is" condition, the Trustee and the Buyers have agreed that the Buyers will be given a credit in the amount of $1,500.00 for home repairs.

7.      The terms of the proposed sale are summarized hereafter and are fully described and set out in the Residential Real Estate Contract (the "Contract"), a true and correct copy of

which is attached hereto as Exhibit A and incorporated herein by this reference. **Interested Parties are encouraged to review the Contract in its entirety. In the case of any discrepancy between the Contract and this Motion, the terms set forth in the Contract shall control.**

8.    The lien held by First Midwest Bank shall be paid in full at closing. Further the secured Proof of Claim filed by First Midwest Bank (#9) for attorney fees in the amount of $6,974.18 shall be included in the lien payoff amount and paid at closing. Any additional attorney fees incurred by First Midwest since the filing of Proof of Claim #9, shall be included in the lien payoff amount and paid at closing.

9.    At close of escrow, the Title Company is authorized to pay a reasonable fee for its services from the proceeds of the Sale. The approximate closing costs due to the Title Company and attributable to the Seller are $2,060.00.

10.    At close of escrow, the Title Company is authorized to pay all Property Taxes due and owing on the Property. The estimated amount of Property Taxes due on the Property for 2015 and 2016 is approximately $7,837.11. Also at the close of escrow, the Seller will be required to provide a credit to the Buyers for the 2017 property taxes in the approximate amount of $4,168.95.

11.    At close of escrow, the Title Company is authorized to pay Nick Patinkin for real estate commissions in the amount of $10,680.00, advertising costs of $350.00, and costs of $92.30 incurred to purchase cleaning supplies for the Property (see attached receipt for cleaning supplies as Exhibit B). The total amount payable to Nick Patinkin at closing is $11,122.30.

12.    At close of escrow, the Title Company is authorized to pay legal fees in the approximate amount of $1,500.00 to Jay Mittlestead. The Trustee has filed a separate Motion to Appoint Special Counsel in conjunction with this Motion to Approve Sale.

13.    In addition to the flat fee for special counsel noted above, at close of escrow, the Title Company is authorized to reimburse Jay Mittlestead, special counsel for the estate, for reasonable costs and expenses, including but not limited; to survey costs and fees in the approximate amount of $450.00. These additional costs and expenses of special counsel are not

-3-

1  expected to exceed $1,000.00. Mr. Mittlestead has agreed to pay the survey fee in advance and
2  on behalf of the estate, in order to expedite the closing process.

3      14.   Pursuant to the terms of the Contract, the Title Company is further authorized to pay
4  the normal fees, taxes, settlement charges and any other typical costs associated with closing.
5  These include, but are not limited to; the estimated state transfer taxes in the approximate amount
6  of $267.00.

7      15.   All remaining net proceeds are to be paid to the Chapter 13 Trustee within 7 days of
8  the close of escrow. Before distributing the net proceeds to allowed claims, the Trustee is
9  authorized to reimburse the Trustee's expense account for the following expenses incurred
10 during the marketing of the Property:

11      a. The Trustee notes that at the time that the Property was listed for sale,
12 the Property was not occupied by the Debtor or any renters. The Trustee incurred costs for the
13 removal of furniture and carpeting from the home. These costs were necessary in order to
14 maximize the return for the estate. To date, the Trustee has paid $3,079.00 for cleaning and
15 waste removal costs. Receipts are attached and incorporated herein as Exhibit C. The Trustee
16 does expect that additional expenses may be incurred prior to closing in order to remove any
17 remaining items from the Property. The Trustee requests that he be reimbursed for any
18 additional costs incurred to remove any remaining items from the property, as long as such costs
19 are reasonable and necessary in order to effectuate the closing of the sale.

20      b. Due to the cold weather in Illinois, the Trustee turned on the electricity
21 and gas to the home. This was necessary in order to allow the real estate agent to show the
22 property and to prevent the pipes from freezing. Further, the Trustee believes that the estate may
23 receive a bill for the water supplied to the home. The Trustee requests reimbursement for the
24 electricity, water, and gas bills due and owing on the property at the time the Property is
25 transferred to the Buyers. The Trustee notes that he has not yet received the first bills for
26 electric, gas and water from the Property, but expects to receive the first bills within the next
27 month. As soon as the sale is finalized, the Trustee will ensure that the gas, water and electric
28 accounts are transferred to the appropriate parties.

-4-

16.     The remaining net proceeds received by the Trustee from the sale of the Property shall be applied as supplemental funds and distributed first for the benefit of priority claims and then for the benefit of general unsecured claims, after deductions for administrative Trustee fees.

17.     The Title Company shall mail a copy of the closing documents direct to Russell Brown, Trustee at 3838 N. Central Ave., Ste. 800, Phoenix, AZ 85012 within 10 days of the close of escrow.

18.     The Bankruptcy Estate will sell and assign to the Buyer, pursuant to 11 U.S.C. § 363, its interest in the Property.  The sale shall be free and clear of claims, liens, adverse interests and encumbrances; and that all such claims, liens, adverse interests and encumbrances automatically attach to the proceeds of the sale in the same effect and priority as they have to the Property.

19.     The sale of the Property shall be "as is/where is", the Trustee makes no warranties, implied or expressed, regarding the Estate's interest in the Property.

20.     The Property has been marketed since September 7, 2017.

21.     The Trustee has determined that the Buyer's offer is the highest and best offer received to date.  Accordingly, the Trustee seeks authority to enter into the Contract with the Buyer, or nominee, or into similar contracts for the sale of the Property in substantially the same form as the Contract, subject to higher and better offers by competing bidders at the hearing to approve the sale of the Property.

22.     The sale represents an arms-length transaction between the parties, made without fraud, collusion, and no attempt has been made by either party to take any unfair advantage of the other. Although the Buyer has disclosed that he is related to the Buyer's real estate broker, the Trustee does not believe the Buyer to be an insider of the Debtor.  The Trustee asserts that the Buyer is not an insider of the Trustee, and further, that the Trustee shares no business relationships with the Buyer.  The Buyer is purchasing the Property in good faith pursuant to 11 U.S.C. §363(m).

23.     This sale is subject to higher and better offers by competing bidders at a hearing to approve the sale to ensure that a fair and equitable value is attributed to the Property for the

-5-

1 benefit of all concerned. The Court retains authority to control the bidding process and to

2 determine whether competing bids are higher and/or better offers.

3     24. Absent Court Order to the contrary, any successful bidder must comply with the

4 terms of the Contract with the sole exception being that the Purchase Price will be the amount of

5 the bid approved by the Court.

6 **C. LEGAL ANALYSIS**

7     25. Pursuant to 11 U.S.C. § 363, the Trustee is authorized to use or lease property of

8 the estate outside the ordinary course of business. The Trustee has determined that the sale as set

9 forth above is in the best interest of the bankruptcy estate and the creditors herein.

10     26. Pursuant to 11 U.S.C. § 363(f), the Property is to be sold to the Buyers free and

11 clear of all claims, liens, adverse interests and that all such claims, liens, adverse interests and

12 encumbrances automatically attach to the proceeds of the sale in the same effect and priority as

13 they have to the Properties.

14     27. The Trustee has determined that the proposed purchase price is fair and

15 reasonable. Accordingly, the sale of the estate's interest in the Property on the terms set forth

16 above is in the best interest of the bankruptcy estate and the creditors herein.

17     28. In order to avoid any potential diminution in the value of the Properties, the

18 Trustee requests that the 14 day stay set forth in Rule 6004(h), Fed.R.Bankr.P., be waived so that

19 the sale of the Property may close as expeditiously as possible.

20     29. The Trustee notes that based on the proposed sales price, the net proceeds will

21 be sufficient to satisfy 100% of allowed unsecured claims. Further, the remaining net proceeds

22 will eventually be distributed to the arrears on the Debtor's Arizona residence. The sale will

23 greatly benefit all interested parties and should allow the Debtor to complete her bankruptcy Plan

24 in less than the projected 60 months.

25 //

26 //

27 //

28 //

WHEREFORE, Trustee respectfully requests that the Court approve the sale of the Property to the Buyer on the terms set forth in the Exhibit attached hereto.

RUSSELL A. BROWN,
CHAPTER 13 TRUSTEE

By: _____
Rachel Flinn, Esq.  ABN 027000
Staff Attorney for Chapter 13 Trustee
*RFlinn@ch13bk.com*

Copy of the foregoing mailed
or emailed to the following parties
on the date of the electronic signature
affixed hereto:

Douglas C. Wigley
dwigley@dessauleslaw.com
Attorney for First Midwest Bank

Nick Patinkin
nickpatinkin@atproperties.com
Realtor

Elizabeth C. Amorosi
OFFICE OF THE UNITED STATES TRUSTEE
Elizabeth.C.Amorosi@usdoj.gov

Brian Dault
brian@daultlaw.com
Debtor's Attorney

Jay Mittelstead
jmittelstead@gmail.com
Special Counsel for the Estate

James Morrone
lawoffice@jamesmorronelaw.com
Buyers' Attorney

-7-

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22 EXHIBIT A

23

24

25

26

27

28

 

## MULTI-BOARD RESIDENTIAL REAL ESTATE CONTRACT 6.1

1  **1. THE PARTIES:** Buyer and Seller are hereinafter referred to as the "Parties".

2  Buyer Name(s) *[please print]* MICHEL P. BARRY & RITA D. BARRY

3  Seller Name(s) *[please print]* ATTORNEYS FOR RUSSELL BROWN, CHAPTER 13 TRUSTEE

4  If Dual Agency Applies, Complete Optional Paragraph 31.

5  **2. THE REAL ESTATE:** Real Estate shall be defined as the property, all improvements, the fixtures and Personal

6  Property included therein. Seller agrees to convey to Buyer or to Buyer's designated grantee, the Real Estate

7  with approximate lot size or acreage of 177X74 _____ commonly known as:

8  **12430 S Moody AVE PALOS HEIGHTS IL 60463**

9  Address _____ City _____ State _____ Zip

10 **Cook** _____ 24293100060000 _____

11 County _____ Unit # (if applicable) _____ Permanent Index Number(s) of Real Estate

12 If Condo/Coop/Townhome Parking is Included: # of spaces(s) _____; identified as Space(s) # _____

13 *[check type]*☐ deeded space, PIN: _____ ☐ limited common element ☐ assigned space.

14 **3. PURCHASE PRICE:** The Purchase Price shall be $ 178,000 _____. After the payment of

15 Earnest Money as provided below, the balance of the Purchase Price, as adjusted by prorations, shall be paid at

16 Closing in "Good Funds" as defined by law.

17 **4. EARNEST MONEY:** Earnest Money shall be held in trust for the mutual benefit of the Parties by *[check one]*:

18 ☑ Seller's Brokerage; ☐ Buyer's Brokerage; ☐ As otherwise agreed by the Parties, as "Escrowee".

19 Initial Earnest Money of $ 2,000 _____ shall be tendered to Escrowee on or before _____ day(s) after Date

20 of Acceptance. Additional Earnest Money of $ _____ shall be tendered by _____, 20 ___.

21 **5. FIXTURES AND PERSONAL PROPERTY AT NO ADDITIONAL COST:** All of the fixtures and included Personal

22 Property are owned by Seller and to Seller's knowledge are in operating condition on the Date of Acceptance,

23 unless otherwise stated herein. Seller agrees to transfer to Buyer all fixtures, all heating, electrical, plumbing,

24 and well systems together with the following items of Personal Property at no additional cost by Bill of Sale at

25 Closing *[Check or enumerate applicable items]*:

| | | | |
|---|---|---|---|
26 | ☐ Refrigerator | ☑ Central Air Conditioning | ☐ Central Humidifier | ☐ Light Fixtures, as they exist |
27 | ☑ Oven/Range/Stove | ☐ Window Air Conditioner(s) | ☐ Water Softener (owned) | ☐ Built-in or attached shelving |
28 | ☐ Microwave | ☐ Ceiling Fan(s) | ☐ Sump Pump(s) | ☐ All Window Treatments & Hardware |
29 | ☑ Dishwasher | ☐ Intercom System | ☐ Electronic or Media Air Filter(s) | ☐ Existing Storms and Screens |
30 | ☐ Garbage Disposal | ☐ Backup Generator System | ☐ Central Vac & Equipment | ☐ Fireplace Screens/Doors/Grates |
31 | ☐ Trash Compactor | ☐ Satellite Dish | ☐ Security System(s) (owned) | ☐ Fireplace Gas Log(s) |
32 | ☑ Washer | ☐ Outdoor Shed | ☑ Garage Door Opener(s) | ☐ Invisible Fence System, Collar & Box |
33 | ☑ Dryer | ☐ Planted Vegetation | with all Transmitters | ☐ Smoke Detectors |
34 | ☐ Attached Gas Grill | ☐ Outdoor Play Set(s) | ☐ All Tacked Down Carpeting | ☐ Carbon Monoxide Detectors |

35 Other Items Included at No Additional Cost: _____

36 _____

37 Items Not Included: _____

38 _____

39 Seller warrants to Buyer that all fixtures, systems and Personal Property included in this Contract shall be in

40 operating condition at Possession except: _____

41 A system or item shall be deemed to be in operating condition if it performs the function for which it is

42 intended, regardless of age, and does not constitute a threat to health or safety.

43 If Home Warranty will be provided, complete Optional Paragraph 34.

X Buyer Initial _MP*X*_ Buyer Initial _RB_          Seller Initial _RB_ Seller Initial _____

Address: 12430 S Moody AVE PALOS HEIGHTS IL 60463                              v6.1

*Page 1 of 13*

44  6. CLOSING: Closing shall be on **or before Dec. 15**_____, 20 **17**___ or at such time as mutually agreed by the
45  Parties in writing. Closing shall take place at the escrow office of the title company (or its issuing agent) that will
46  issue the Owner's Policy of Title Insurance, situated nearest the Real Estate or as shall be agreed mutually by the Parties.

47  7. POSSESSION: Unless otherwise provided in Paragraph 40, Seller shall deliver possession to Buyer at Closing.
48  Possession shall be deemed to have been delivered when Seller has vacated the Real Estate and delivered keys
49  to the Real Estate to Buyer or to the office of the Seller's Brokerage.

50  8. MORTGAGE CONTINGENCY: If this transaction is NOT CONTINGENT ON FINANCING, Optional Paragraph 36 a) OR
51  Paragraph 36 b) MUST BE USED. If any portion of Paragraph 36 is used, the provisions of this Paragraph 8 are NOT APPLICABLE.
52  This Contract is contingent upon Buyer obtaining a *[check one]* ☑ fixed; ☐ adjustable; *[check one]* ☑ conventional:
53  ☐ FHA/VA (if FHA/VA is chosen, complete Paragraph 37); ☐ other _____ loan for **80**_ %
54  of the Purchase Price, plus private mortgage insurance (PMI), if required, with an interest rate (initial rate if an
55  adjustable rate mortgage used) not to exceed **4.5**_____% per annum, amortized over not less than **30**__ years.
56  Buyer shall pay loan origination fee and/or discount points not to exceed **-0-**____ % of the loan amount. Buyer
57  shall pay usual and customary processing fees and closing costs charged by lender. (Complete Paragraph 35 if
58  closing cost credits apply).

59  Buyer shall make written loan application within five (5) Business Days after the Date of Acceptance; failure to
60  do so shall constitute an act of Default under this Contract. *[Complete both a) and b)]*:
61  a)  Not later than _____, 20 ____, (if no date is inserted, the date shall be twenty-one (21) days after
62      the Date of Acceptance) Buyer shall provide written evidence from Buyer's licensed lending institution
63      confirming that Buyer has provided to such lending institution an "Intent to Proceed" as that term is defined
64      in the rules of the Consumer Financial Protection Bureau and has paid all lender application and appraisal
65      fees. If Buyer is unable to provide such written evidence, Seller shall have the option of declaring this
66      Contract terminated by giving Notice to the other Party not later than two (2) Business Days after the date
67      specified herein or any extension date agreed to by the Parties in writing.
68  b)  Not later than **Dec. 12**_____, 20 **17**___, (if no date is inserted, the date shall be sixty (60) days after the
69      Date of Acceptance) Buyer shall provide written evidence from Buyer's licensed lending institution
70      confirming that Buyer has received a written mortgage commitment for the loan referred to above. If Buyer
71      is unable to provide such written evidence either Buyer or Seller shall have the option of declaring this
72      Contract terminated by giving Notice to the other Party not later than two (2) Business Days after the date
73      specified herein or any extension date agreed to by the Parties in writing.
74  A Party causing delay in the loan approval process shall not have the right to terminate under either of the
75  preceding paragraphs. In the event neither Party elects to declare this Contract terminated as of the latter of
76  the dates specified above (as may be amended from time to time), then this Contract shall continue in full
77  force and effect without any loan contingencies.

78  Unless otherwise provided in Paragraph 32, this Contract shall not be contingent upon the sale and/or
79  closing of Buyer's existing real estate. Buyer shall be deemed to have satisfied the financing conditions of this
80  paragraph if Buyer obtains a loan commitment in accordance with the terms of this paragraph even though the
81  loan is conditioned on the sale and/or closing of Buyer's existing real estate.

82  9. STATUTORY DISCLOSURES: If applicable, prior to signing this Contract, Buyer:
83  *[check one]* ☑ has ☐ has not received a completed Illinois Residential Real Property Disclosure;
84  *[check one]* ☑ has ☐ has not received the EPA Pamphlet, "Protect Your Family From Lead In Your Home";
85  *[check one]* ☑ has ☐ has not received a Lead-Based Paint Disclosure;
86  *[check one]* ☑ has ☐ has not received the IEMA, "Radon Testing Guidelines for Real Estate Transactions";

X _____ Buyer Initial _MB_ X _____ Buyer Initial _RB_          Seller Initial _RB_ _____ Seller Initial _____
Address: _12430 S Moody AVE PALOS HEIGHTS IL 60463_                                                    v6.1
Page 2 of 13

87 *[check one]* ☐ has ☐ has not received the Disclosure of Information on Radon Hazards.

88 **10. PRORATIONS:** Proratable items shall include without limitation, rents and deposits (if any) from tenants;
89 Special Service Area or Special Assessment Area tax for the year of Closing only; utilities, water and sewer; and
90 Homeowner or Condominium Association fees (and Master/Umbrella Association fees, if applicable).
91 Accumulated reserves of a Homeowner/Condominium Association(s) are not a proratable item. Seller
92 represents that as of the Date of Acceptance Homeowner/Condominium Association(s) fees are $ _____
93 per _____ (and, if applicable Master/Umbrella Association fees are $ _____ per _____).
94 Seller agrees to pay prior to or at Closing any special assessments (by any association or governmental entity)
95 confirmed prior to the Date of Acceptance. Special Assessment Area or Special Service Area installments due
96 after the year of Closing shall not be proratable items and shall be paid by Buyer. The general Real Estate taxes
97 shall be prorated as of the date of Closing based on **105** % of the most recent ascertainable full year tax bill. All
98 prorations shall be final as of Closing, except as provided in Paragraph 22. If the amount of the most recent
99 ascertainable full year tax bill reflects a homeowner, senior citizen or other exemption, a senior freeze or senior
100 deferral, then Seller has submitted or will submit in a timely manner all necessary documentation to the
101 appropriate governmental entity, before or after Closing, to preserve said exemption(s). The requirements of
102 this Paragraph shall survive the Closing.

103 **11. ATTORNEY REVIEW:** Within five (5) Business Days after Date of Acceptance, the attorneys for the respective
104 Parties, by Notice, may:

105 a) Approve this Contract; or
106 b) Disapprove this Contract, which disapproval shall not be based solely upon the Purchase Price; or
107 c) Propose modifications except for the Purchase Price. If within ten (10) Business Days after the Date of
108     Acceptance written agreement is not reached by the Parties with respect to resolution of the proposed
109     modifications, then either Party may terminate this Contract by serving Notice, whereupon this Contract
110     shall be null and void; or
111 d) Propose suggested changes to this Contract. If such suggestions are not agreed upon, neither Party may
112     declare this Contract null and void and this Contract shall remain in full force and effect.

113 **Unless otherwise specified, all Notices shall be deemed made pursuant to Paragraph 11 c). If Notice is not**
114 **served within the time specified herein, the provisions of this paragraph shall be deemed waived by the**
115 **Parties and this Contract shall remain in full force and effect.**

116 **12. PROFESSIONAL INSPECTIONS AND INSPECTION NOTICES:** Buyer may conduct at Buyer's expense (unless
117 otherwise provided by governmental regulations) any or all of the following inspections of the Real Estate by
118 one or more licensed or certified inspection services: home, radon, environmental, lead-based paint, lead-based
119 paint hazards or wood-destroying insect infestation.

120 a) Buyer agrees that minor repairs and routine maintenance items of the Real Estate do not constitute defects
121     and are not a part of this contingency. The fact that a functioning major component may be at the end of
122     its useful life shall not render such component defective for purposes of this paragraph. Buyer shall
123     indemnify Seller and hold Seller harmless from and against any loss or damage caused by the acts of
124     negligence of Buyer or any person performing any inspection. The home inspection shall cover only the
125     major components of the Real Estate, including but not limited to central heating system(s), central cooling
126     system(s), plumbing and well system, electrical system, roof, walls, windows, doors, ceilings, floors,
127     appliances and foundation. A major component shall be deemed to be in operating condition if it performs
128     the function for which it is intended, regardless of age, and does not constitute a threat to health or safety. If
129     radon mitigation is performed, Seller shall pay for any retest.

X *Buyer Initial* MB    X *Buyer Initial* GB          *Seller Initial* PB    *Seller Initial* _____
*Address:* 12430 S Moody AVE PALOS HEIGHTS IL 60463 _____ *v6.1*
*Page 3 of 13*

130 b) Buyer shall serve Notice upon Seller or Seller's attorney of any defects disclosed by any inspection for which
131 Buyer requests resolution by Seller, together with a copy of the pertinent pages of the inspection reports
132 within five (5) Business Days (ten (10) calendar days for a lead-based paint or lead-based paint hazard
133 inspection) after the Date of Acceptance. If within ten (10) Business Days after the Date of Acceptance
134 written agreement is not reached by the Parties with respect to resolution of all inspection issues, then either
135 Party may terminate this Contract by serving Notice to the other Party, whereupon this Contract shall be
136 null and void.
137 c) Notwithstanding anything to the contrary set forth above in this paragraph, in the event the inspection
138 reveals that the condition of the Real Estate is unacceptable to Buyer and Buyer serves Notice to Seller
139 within five (5) Business Days after the Date of Acceptance, this Contract shall be null and void. Said Notice
140 shall not include any portion of the inspection reports unless requested by Seller.
141 d) **Failure of Buyer to conduct said inspection(s) and notify Seller within the time specified operates as a**
142 **waiver of Buyer's rights to terminate this Contract under this Paragraph 12 and this Contract shall remain**
143 **in full force and effect.**

144 **13. HOMEOWNER INSURANCE:** This Contract is contingent upon Buyer obtaining evidence of insurability for an
145 Insurance Service Organization HO-3 or equivalent policy at standard premium rates within ten (10) Business
146 Days after the Date of Acceptance. **If Buyer is unable to obtain evidence of insurability and serves Notice**
147 **with proof of same to Seller within time specified, this Contract shall be null and void. If Notice is not**
148 **served within the time specified, Buyer shall be deemed to have waived this contingency and this Contract**
149 **shall remain in full force and effect.**

150 **14. FLOOD INSURANCE:** Buyer shall have the option to declare this Contract null and void if the Real Estate is
151 located in a special flood hazard area. **If Notice of the option to declare contract null and void is not given to**
152 **Seller within ten (10) Business Days after the Date of Acceptance or by the time specified in Paragraph 8 b),**
153 **whichever is later, Buyer shall be deemed to have waived such option and this Contract shall remain in full**
154 **force and effect.** Nothing herein shall be deemed to affect any rights afforded by the Residential Real Property
155 Disclosure Act.

156 **15. CONDOMINIUM/COMMON INTEREST ASSOCIATIONS: (If applicable)** The Parties agree that the terms
157 contained in this paragraph, which may be contrary to other terms of this Contract, shall supersede any
158 conflicting terms.
159 a) Title when conveyed shall be good and merchantable, subject to terms, provisions, covenants and conditions
160 of the Declaration of Condominium/Covenants, Conditions and Restrictions ("Declaration/CCRs") and all
161 amendments; public and utility easements including any easements established by or implied from the
162 Declaration/CCRs or amendments thereto; party wall rights and agreements; limitations and conditions
163 imposed by the Condominium Property Act; installments due after the date of Closing of general
164 assessments established pursuant to the Declaration/CCRs.
165 b) Seller shall be responsible for payment of all regular assessments due and levied prior to Closing and for all
166 special assessments confirmed prior to the Date of Acceptance.
167 c) Seller shall notify Buyer of any proposed special assessment or increase in any regular assessment between
168 the Date of Acceptance and Closing. The Parties shall have three (3) Business Days to reach agreement
169 relative to payment thereof. Absent such agreement either Party may declare the Contract null and void.
170 d) Seller shall, within five (5) Business Days from the Date of Acceptance, apply for those items of disclosure
171 upon sale as described in the Illinois Condominium Property Act, and provide same in a timely manner, but
172 no later than the time period provided for by law. This Contract is subject to the condition that Seller be able

X _Buyer Initial_ MB X _Buyer Initial_ QB          _Seller Initial_ PB _Seller Initial_ _____
_Address:_ 12430 S Moody AVE PALOS HEIGHTS IL 60463                                          _v6.1_
_Page 4 of 13_

173   to procure and provide to Buyer a release or waiver of any right of first refusal or other pre-emptive rights to
174   purchase created by the Declaration/CCRs. In the event the Condominium Association requires the personal
175   appearance of Buyer or additional documentation, Buyer agrees to comply with same.
176   e) In the event the documents and information provided by Seller to Buyer disclose that the existing
177      improvements are in violation of existing rules, regulations or other restrictions or that the terms and
178      conditions contained within the documents would unreasonably restrict Buyer's use of the premises or
179      would result in financial obligations unacceptable to Buyer in connection with owning the Real Estate, then
180      Buyer may declare this Contract null and void by giving Seller Notice within five (5) Business Days after the
181      receipt of the documents and information required by this Paragraph, listing those deficiencies which are
182      unacceptable to Buyer. If Notice is not served within the time specified, Buyer shall be deemed to have
183      waived this contingency, and this Contract shall remain in full force and effect.
184   f) Seller shall not be obligated to provide a condominium survey.
185   g) Seller shall provide a certificate of insurance showing Buyer and Buyer's mortgagee, if any, as an insured.

186 **16. THE DEED:** Seller shall convey or cause to be conveyed to Buyer or Buyer's Designated grantee good and
187 merchantable title to the Real Estate by recordable Warranty Deed, with release of homestead rights, (or the
188 appropriate deed if title is in trust or in an estate), and with real estate transfer stamps to be paid by Seller
189 (unless otherwise designated by local ordinance). Title when conveyed will be good and merchantable, subject
190 only to: covenants, conditions and restrictions of record and building lines and easements, if any, provided they
191 do not interfere with the current use and enjoyment of the Real Estate; and general real estate taxes not due and
192 payable at the time of Closing.

193 **17. MUNICIPAL ORDINANCE, TRANSFER TAX, AND GOVERNMENTAL COMPLIANCE:**
194   a) The Parties are cautioned that the Real Estate may be situated in a municipality that has adopted a pre-
195      closing inspection requirement, municipal Transfer Tax or other similar ordinances. Transfer taxes required
196      by municipal ordinance shall be paid by the Party designated in such ordinance.
197   b) The Parties agree to comply with the reporting requirements of the applicable sections of the Internal
198      Revenue Code and the Real Estate Settlement Procedures Act of 1974, as amended.

199 **18. TITLE:** At Seller's expense, Seller will deliver or cause to be delivered to Buyer or Buyer's attorney within
200 customary time limitations and sufficiently in advance of Closing, as evidence of title in Seller or Grantor, a title
201 commitment for an ALTA title insurance policy in the amount of the Purchase Price with extended coverage by
202 a title company licensed to operate in the State of Illinois, issued on or subsequent to the Date of Acceptance,
203 subject only to items listed in Paragraph 16. The requirement to provide extended coverage shall not apply if the
204 Real Estate is vacant land. The commitment for title insurance furnished by Seller will be presumptive evidence
205 of good and merchantable title as therein shown, subject only to the exceptions therein stated. If the title
206 commitment discloses any unpermitted exceptions or if the Plat of Survey shows any encroachments or other
207 survey matters that are not acceptable to Buyer, then Seller shall have said exceptions, survey matters or
208 encroachments removed, or have the title insurer commit to either insure against loss or damage that may
209 result from such exceptions or survey matters or insure against any court-ordered removal of the
210 encroachments. If Seller fails to have such exceptions waived or insured over prior to Closing, Buyer may elect
211 to take title as it then is with the right to deduct from the Purchase Price prior encumbrances of a definite or
212 ascertainable amount. Seller shall furnish Buyer at Closing an Affidavit of Title covering the date of Closing, and
213 shall sign any other customary forms required for issuance of an ALTA Insurance Policy.

214 **19. PLAT OF SURVEY:** Not less than one (1) Business Day prior to Closing, except where the Real Estate is a
215 condominium (see Paragraph 15) Seller shall, at Seller's expense, furnish to Buyer or Buyer's attorney a Plat of

X *Buyer Initial* MB X *Buyer Initial* RB      *Seller Initial* RB   *Seller Initial* _____
*Address:* 12430 S Moody AVE PALOS HEIGHTS IL 60463                             *v6.1*
*Page 5 of 13*

259 X *[Initials]* _MB_ _RB_____ There *[check one]* ☐ is ☑ is not a pending or unconfirmed special assessment
260 affecting the Real Estate by any association or governmental entity payable by Buyer after the date of Closing.
261 X _MB_ _RB_____ The Real Estate *[check one]* ☐ is ☑ is not located within a Special Assessment Area or
262 Special Service Area, payments for which will not be the obligation of Seller after the year in which the Closing occurs.
263 All Seller representations shall be deemed re-made as of Closing. If prior to Closing Seller becomes aware of
264 matters that require modification of the representations previously made in this Paragraph 23, Seller shall
265 promptly notify Buyer. If the matters specified in such Notice are not resolved prior to Closing, Buyer may
266 terminate this Contract by Notice to Seller and this Contract shall be null and void.

267 **24. BUSINESS DAYS/HOURS:** Business Days are defined as Monday through Friday, excluding Federal
268 holidays. Business Hours are defined as 8:00 A.M. to 6:00 P.M. Chicago time.

269 **25. FACSIMILE OR DIGITAL SIGNATURES:** Facsimile or digital signatures shall be sufficient for purposes of
270 executing, negotiating, and finalizing this Contract, and delivery thereof by one of the following methods shall
271 be deemed delivery of this Contract containing original signature(s). An acceptable facsimile signature may be
272 produced by scanning an original, hand-signed document and transmitting same by facsimile. An acceptable
273 digital signature may be produced by use of a qualified, established electronic security procedure mutually
274 agreed upon by the Parties. Transmissions of a digitally signed copy hereof shall be by an established, mutually
275 acceptable electronic method, such as creating a PDF ("Portable Document Format") document incorporating
276 the digital signature and sending same by electronic mail.

277 **26. DIRECTION TO ESCROWEE:** In every instance where *this Contract shall be deemed null and void or if this
278 Contract may be terminated by either Party, the following shall be deemed incorporated: "and Earnest Money
279 refunded upon the joint written direction by the Parties to Escrowee or upon an entry of an order by a court of
280 competent jurisdiction."
281 In the event either Party has declared the Contract null and void or the transaction has failed to close as
282 provided for in this Contract and if Escrowee has not received joint written direction by the Parties or such court
283 order, the Escrowee may elect to proceed as follows:

284 a) Escrowee shall give written Notice to the Parties as provided for in this Contract at least fourteen (14) days
285 prior to the date of intended disbursement of Earnest Money indicating the manner in which Escrowee
286 intends to disburse in the absence of any written objection. If no written objection is received by the date
287 indicated in the Notice then Escrowee shall distribute the Earnest Money as indicated in the written Notice
288 to the Parties. If any Party objects in writing to the intended disbursement of Earnest Money then Earnest
289 Money shall be held until receipt of joint written direction from all Parties or until receipt of an order of a
290 court of competent jurisdiction.
291 b) Escrowee may file a Suit for Interpleader and deposit any funds held into the Court for distribution after
292 resolution of the dispute between Seller and Buyer by the Court. Escrowee may retain from the funds
293 deposited with the Court the amount necessary to reimburse Escrowee for court costs and reasonable
294 attorney's fees incurred due to the filing of the Interpleader. If the amount held in escrow is inadequate to
295 reimburse Escrowee for the costs and attorney's fees, Buyer and Seller shall jointly and severally indemnify
296 Escrowee for additional costs and fees incurred in filing the Interpleader action.

297 **27. NOTICE:** Except as provided in Paragraph 32 c) 2) regarding the manner of service for "kick-out" Notices, all
298 Notices shall be in writing and shall be served by one Party or attorney to the other Party or attorney. Notice to
299 any one of the multiple person Party shall be sufficient Notice to all. Notice shall be given in the following manner:
300 a) By personal delivery; or

X *Buyer Initial* _MB_ X *Buyer Initial* _RB_          *Seller Initial* _RB_ ____ *Seller Initial* _____
*Address:* 12430 S Moody AVE PALOS HEIGHTS IL 60463                                          *v6.1*
*Page 7 of 13*

216 Survey that conforms to the current Minimum Standard of Practice for boundary surveys, is dated not more
217 than six (6) months prior to the date of Closing, and is prepared by a professional land surveyor licensed to
218 practice land surveying under the laws of the State of Illinois. The Plat of Survey shall show visible evidence of
219 improvements, rights of way, easements, use and measurements of all parcel lines. The land surveyor shall set
220 monuments or witness corners at all accessible corners of the land. All such corners shall also be visibly staked
221 or flagged. The Plat of Survey shall include the following statement placed near the professional land surveyor's
222 seal and signature: "This professional service conforms to the current Illinois Minimum Standards for a
223 boundary survey." A Mortgage Inspection, as defined, is not a boundary survey and is not acceptable.

224 **20. DAMAGE TO REAL ESTATE OR CONDEMNATION PRIOR TO CLOSING:** If prior to delivery of the deed the
225 Real Estate shall be destroyed or materially damaged by fire or other casualty, or the Real Estate is taken by
226 condemnation, then Buyer shall have the option of either terminating this Contract (and receiving a refund of
227 earnest money) or accepting the Real Estate as damaged or destroyed, together with the proceeds of the
228 condemnation award or any insurance payable as a result of the destruction or damage, which gross proceeds
229 Seller agrees to assign to Buyer and deliver to Buyer at Closing. Seller shall not be obligated to repair or replace
230 damaged improvements. The provisions of the Uniform Vendor and Purchaser Risk Act of the State of Illinois
231 shall be applicable to this Contract, except as modified by this paragraph.

232 **21. CONDITION OF REAL ESTATE AND INSPECTION:** Seller agrees to leave the Real Estate in broom clean
233 condition. All refuse and personal property that is not to be conveyed to Buyer shall be removed from the Real
234 Estate at Seller's expense prior to delivery of Possession. Buyer shall have the right to inspect the Real Estate,
235 fixtures and included Personal Property prior to Possession to verify that the Real Estate, improvements and
236 included Personal Property are in substantially the same condition as of the Date of Acceptance, normal wear
237 and tear excepted.

238 **22. REAL ESTATE TAX ESCROW:** In the event the Real Estate is improved, but has not been previously taxed for
239 the entire year as currently improved, the sum of three percent (3%) of the Purchase Price shall be deposited in
240 escrow with the title company with the cost of the escrow to be divided equally by Buyer and Seller and paid at
241 Closing. When the exact amount of the taxes to be prorated under this Contract can be ascertained, the taxes
242 shall be prorated by Seller's attorney at the request of either Party and Seller's share of such tax liability after
243 proration shall be paid to Buyer from the escrow funds and the balance, if any, shall be paid to Seller. If Seller's
244 obligation after such proration exceeds the amount of the escrow funds, Seller agrees to pay such excess
245 promptly upon demand.

246 **23. SELLER REPRESENTATIONS:** Seller's representations contained in this paragraph shall survive the Closing.
247 Seller represents that with respect to the Real Estate Seller has no knowledge of nor has Seller received any
248 written notice from any association or governmental entity regarding:
249 a) zoning, building, fire or health code violations that have not been corrected;
250 b) any pending rezoning;
251 c) boundary line disputes;
252 d) any pending condemnation or Eminent Domain proceeding;
253 e) easements or claims of easements not shown on the public records;
254 f) any hazardous waste on the Real Estate;
255 g) any improvements to the Real Estate for which the required initial and final permits were not obtained;
256 h) any improvements to the Real Estate which are not included in full in the determination of the most recent tax assessment; or
257 i) any improvements to the Real Estate which are eligible for the home improvement tax exemption.
258 Seller further represents that:

X _Buyer Initial_ _MB_ X _Buyer Initial_ _RB_          _Seller Initial_ _RB_ _Seller Initial_ _____
_Address:_ 12430 S Moody AVE PALOS HEIGHTS IL 60463                                    _v6.1_
_Page 6 of 13_

301  b) By mailing to the addresses recited herein by regular mail and by certified mail, return receipt requested. Except
302     as otherwise provided herein, Notice served by certified mail shall be effective on the date of mailing; or
303  c) By facsimile transmission. Notice shall be effective as of date and time of the transmission, provided that the
304     Notice transmitted shall be sent on Business Days during Business Hours. In the event Notice is transmitted
305     during non-business hours, the effective date and time of Notice is the first hour of the next Business Day after
306     transmission; or
307  d) By e-mail transmission if an e-mail address has been furnished by the recipient Party or the recipient Party's
308     attorney to the sending Party or is shown in this Contract. Notice shall be effective as of date and time of e-mail
309     transmission, provided that, in the event e-mail Notice is transmitted during non-business hours, the effective
310     date and time of Notice is the first hour of the next Business Day after transmission. An attorney or Party may
311     opt out of future e-mail Notice by any form of Notice provided by this Contract; or
312  e) By commercial overnight delivery (e.g., FedEx). Such Notice shall be effective on the next Business Day
313     following deposit with the overnight delivery company.

314  **28. PERFORMANCE: Time is of the essence of this Contract.** In any action with respect to this Contract, the Parties
315  are free to pursue any legal remedies at law or in equity and the prevailing party in litigation shall be entitled to
316  collect reasonable attorney fees and costs from the non-prevailing party as ordered by a court of competent jurisdiction.

317  **29. CHOICE OF LAW AND GOOD FAITH:** All terms and provisions of this Contract including but not limited to the
318  Attorney Review and Professional Inspection paragraphs shall be governed by the laws of the State of Illinois and
319  are subject to the covenant of good faith and fair dealing implied in all Illinois contracts.

320  **30. OTHER PROVISIONS:** This Contract is also subject to those OPTIONAL PROVISIONS initialed by the Parties
321  and the following additional attachments, if any: The Property is being sold in "as is" condition. This is bankruptcy estate property, the Trustee has not
322  viewed the Property and cannot offer any warranties. Buyers understand that this a bankruptcy property sale and the sale is contingent upon Bankruptcy Court approval.
    the Bankruptcy Court will allow the offer to be subject to higher and better bids pursuant to the motion to approve sale which will be filed with the Court.
323                        **OPTIONAL PROVISIONS (Applicable ONLY if initialed by all Parties)**

324  [Initials] _____ _____  **31. CONFIRMATION OF DUAL AGENCY:** The Parties confirm that they have previously
325  consented to _____ (Licensee) acting as a Dual Agent in providing
326  brokerage services on their behalf and specifically consent to Licensee acting as a Dual Agent with regard to the
327  transaction referred to in this Contract.

328  _____ _____  **32. SALE OF BUYER'S REAL ESTATE:**
329  a)  REPRESENTATIONS ABOUT BUYER'S REAL ESTATE: Buyer represents to Seller as follows:
330     1) Buyer owns real estate (hereinafter referred to as "Buyer's real estate") with the address of:
331  _____
332  Address                              City              State           Zip
333     2) Buyer [check one] ☐ has ☐ has not entered into a contract to sell Buyer's real estate.
334        If Buyer has entered into a contract to sell Buyer's real estate, that contract:
335        a) [check one] ☐ is ☐ is not subject to a mortgage contingency.
336        b) [check one] ☐ is ☐ is not subject to a real estate sale contingency.
337        c) [check one] ☐ is ☐ is not subject to a real estate closing contingency.
338     3) Buyer [check one] ☐ has ☐ has not listed Buyer's real estate for sale with a licensed real estate broker and
339        in a local multiple listing service.
340     4) If Buyer's real estate is not listed for sale with a licensed real estate broker and in a local multiple listing
341        service, Buyer [check one]:

X _Buyer Initial_ MB  X _Buyer Initial_ RB        _Seller Initial_ PB  _Seller Initial_ _____
_Address:_ 12430 S Moody AVE PALOS HEIGHTS IL 60463                          v6.1
_Page 8 of 13_

342     a) ☐ Shall list real estate for sale with a licensed real estate broker who will place it in a local multiple
343        listing service within five (5) Business Days after Date of Acceptance.
344        *[For information only]* Broker: _____
345        Broker's Address: _____ Phone: _____
346     b) ☐ Does not intend to list said real estate for sale.
347 **b)** CONTINGENCIES BASED UPON SALE AND/OR CLOSING OF REAL ESTATE:
348     1) This Contract is contingent upon Buyer having entered into a contract for the sale of Buyer's real estate that
349        is in full force and effect as of _____, 20 _____. Such contract should provide for a closing
350        date not later than the Closing Date set forth in this Contract. If Notice is served on or before the date set
351        forth in this subparagraph that Buyer has not procured a contract for the sale of Buyer's real estate, this
352        Contract shall be null and void. If Notice that Buyer has not procured a contract for the sale of Buyer's
353        real estate is not served on or before the close of business on the date set forth in this subparagraph,
354        Buyer shall be deemed to have waived all contingencies contained in this Paragraph 32, and this
355        Contract shall remain in full force and effect. (If this paragraph is used, then the following paragraph <u>must</u>
356        be completed.)
357     2) In the event Buyer has entered into a contract for the sale of Buyer's real estate as set forth in Paragraph 32
358        b) 1) and that contract is in full force and effect, or has entered into a contract for the sale of Buyer's real
359        estate prior to the execution of this Contract, this Contract is contingent upon Buyer closing the sale of
360        Buyer's real estate on or before _____, 20 _____. If Notice that Buyer has not closed the sale
361        of Buyer's real estate is served before the close of business on the next Business Day after the date set
362        forth in the preceding sentence, this Contract shall be null and void. If Notice is not served as described
363        in the preceding sentence, Buyer shall have deemed to have waived all contingencies contained in this
364        Paragraph 32, and this Contract shall remain in full force and effect.
365     3) If the contract for the sale of Buyer's real estate is terminated for any reason after the date set forth in
366        Paragraph 32 b) 1) (or after the date of this Contract if no date is set forth in Paragraph 32 b) 1)), Buyer shall,
367        within three (3) Business Days of such termination, notify Seller of said termination. Unless Buyer, as part
368        of said Notice, waives all contingencies in Paragraph 32 and complies with Paragraph 32 d), this Contract
369        shall be null and void as of the date of Notice. If Notice as required by this subparagraph is not served
370        within the time specified, Buyer shall be in default under the terms of this Contract.
371 **c)** SELLER'S RIGHT TO CONTINUE TO OFFER REAL ESTATE FOR SALE: During the time of this contingency,
372     Seller has the right to continue to show the Real Estate and offer it for sale subject to the following:
373     1) If Seller accepts another bona fide offer to purchase the Real Estate while contingencies expressed in
374        Paragraph 32 b) are in effect, Seller shall notify Buyer in writing of same. Buyer shall then have _____
375        hours after Seller gives such Notice to waive the contingencies set forth in Paragraph 32 b), subject to
376        Paragraph 32 d).
377     2) Seller's Notice to Buyer (commonly referred to as a 'kick-out' Notice) shall be in writing and shall be served
378        on Buyer, not Buyer's attorney or Buyer's real estate agent. Courtesy copies of such 'kick-out' Notice should
379        be sent to Buyer's attorney and Buyer's real estate agent, if known. Failure to provide such courtesy copies
380        shall not render Notice invalid. Notice to any one of a multiple-person Buyer shall be sufficient Notice to all
381        Buyers. Notice for the purpose of this subparagraph only shall be served upon Buyer in the following manner:
382        a) By personal delivery effective at the time and date of personal delivery; or
383        b) By mailing to the address recited herein for Buyer by regular mail and by certified mail. Notice shall be
384        effective at 10:00 A.M. on the morning of the second day following deposit of Notice in the U.S. Mail; or

X *Buyer Initial* MB  X *Buyer Initial* RB         *Seller Initial* RB    *Seller Initial* _____
Address: 12430 S Moody AVE PALOS HEIGHTS IL 60463 _____    v6.1
*Page 9 of 13*

385        c) By commercial delivery overnight (e.g., FedEx). Notice shall be effective upon delivery or at 4:00 P.M.
386             Chicago time on the next delivery day following deposit with the overnight delivery company,
387             whichever first occurs.
388       3) If Buyer complies with the provisions of Paragraph 32 d) then this Contract shall remain in full force and effect.
389       4) If the contingencies set forth in Paragraph 32 b) are NOT waived in writing, within said time period by
390           Buyer, this Contract shall be null and void.
391       5) Except as provided in Paragraph 32 c) 2) above, all Notices shall be made in the manner provided by
392           Paragraph 27 of this Contract.
393       6) Buyer waives any ethical objection to the delivery of Notice under this paragraph by Seller's attorney or
394           representative.

395   d) **WAIVER OF PARAGRAPH 32 CONTINGENCIES:** Buyer shall be deemed to have waived the contingencies in
396     Paragraph 32 b) when Buyer has delivered written waiver and deposited with the Escrowee additional earnest
397     money in the amount of $_____ in the form of a cashier's or certified check within the time
398     specified. If Buyer fails to deposit the additional earnest money within the time specified, the waiver shall be
399     deemed ineffective and this Contract shall be null and void.
400   e) **BUYER COOPERATION REQUIRED:** Buyer authorizes Seller or Seller's agent to verify representations contained
401     in Paragraph 32 at any time, and Buyer agrees to cooperate in providing relevant information.

402   _____ **33. CANCELLATION OF PRIOR REAL ESTATE CONTRACT:** In the event either Party has entered
403   into a prior real estate contract, this Contract shall be subject to written cancellation of the prior contract on or before
404   _____, 20____. In the event the prior contract is not cancelled within the time specified, this
405   Contract shall be null and void. Seller's notice to the purchaser under the prior contract should not be served
406   until after Attorney Review and Professional Inspections provisions of this Contract have expired, been
407   satisfied or waived.

408   _____ **34. HOME WARRANTY:** Seller shall provide at no expense to Buyer a Home Warranty at a cost
409   of $_____. Evidence of a fully pre-paid policy shall be delivered at Closing.

410   _____ **35. CREDIT AT CLOSING:** Provided Buyer's lender permits such credit to show on the HUD-1
411   Settlement Statement or Closing Disclosure, and if not, such lesser amount as the lender permits, Seller agrees to
412   credit $_____ to Buyer at Closing to be applied to prepaid expenses, closing costs or both.

413   _____ **36. TRANSACTIONS NOT CONTINGENT ON FINANCING: IF EITHER OF THE FOLLOWING**
414   **ALTERNATIVE OPTIONS IS SELECTED, THE PROVISIONS OF THE MORTGAGE CONTINGENCY PARAGRAPH 8**
415   **SHALL NOT APPLY [CHOOSE ONLY ONE]:**
416   a)  _____ **Transaction With No Mortgage (All Cash):** If this selection is made, Buyer will pay at closing,
417       in the form of "Good Funds" the difference (plus or minus prorations) between the Purchase Price and the
418       amount of the Earnest Money deposited pursuant to Paragraph 4 above. Buyer represents to Seller, as of the
419       Date of Offer, that Buyer has sufficient funds available to satisfy the provisions of this paragraph. Buyer agrees
420       to verify the above representation upon the reasonable request of Seller and to authorize the disclosure of such
421       financial information to Seller, Seller's attorney or Seller's broker that may be reasonably necessary to prove the
422       availability of sufficient funds to close. Buyer understands and agrees that, so long as Seller has fully complied
423       with Seller's obligations under this Contract, any act or omission outside of the control of Seller, whether
424       intentional or not, that prevents Buyer from satisfying the balance due from Buyer at closing, shall constitute a
425       material breach of this Contract by Buyer. The Parties shall share the title company escrow closing fee equally.
426       Unless otherwise provided in Paragraph 32, this Contract shall not be contingent upon the sale and/or
427       closing of Buyer's existing real estate.

X *MB*    X *RB*
*Buyer Initial*        *Buyer Initial*                           *Seller Initial*        *Seller Initial* _____
*Address:* 12430 S Moody AVE PALOS HEIGHTS IL 60463                                       *v6.1*

428    b) _____ **Transaction, Mortgage Allowed:** If this selection is made, Buyer will pay at closing, in the
429    form of "Good Funds" the difference (plus or minus prorations) between the Purchase Price and the amount of
430    the Earnest Money deposited pursuant to Paragraph 4 above. Buyer represents to Seller, as of the Date of Offer,
431    that Buyer has sufficient funds available to satisfy the provisions of this paragraph. Buyer agrees to verify the
432    above representation upon the reasonable request of Seller and to authorize the disclosure of such financial
433    information to Seller, Seller's attorney or Seller's broker that may be reasonably necessary to prove the
434    availability of sufficient funds to close. Notwithstanding such representation, Seller agrees to reasonably and
435    promptly cooperate with Buyer so that Buyer may apply for and obtain a mortgage loan or loans including but
436    not limited to providing access to the Real Estate to satisfy Buyer's obligations to pay the balance due (plus or
437    minus prorations) to close this transaction. Such cooperation shall include the performance in a timely manner
438    of all of Seller's pre-closing obligations under this Contract. This Contract shall NOT be contingent upon
439    Buyer obtaining financing. Buyer understands and agrees that, so long as Seller has fully complied with
440    Seller's obligations under this Contract, any act or omission outside of the control of Seller, whether intentional
441    or not, that prevents Buyer from satisfying the balance due from Buyer at Closing shall constitute a material
442    breach of this Contract by Buyer. Buyer shall pay the title company escrow closing fee. Unless otherwise
443    provided in Paragraph 32, this Contract shall not be contingent upon the sale and/or closing of Buyer's
444    existing real estate.

445    _____ **37. VA OR FHA FINANCING:** If Buyer is seeking VA or FHA financing, required FHA or VA
446    amendments and disclosures shall be attached to this Contract. If VA, the Funding Fee, or if FHA, the Mortgage
447    Insurance Premium (MIP) shall be paid by Buyer and *[check one]* ☐ shall ☐ shall not be added to the mortgage loan amount.

448    _____ **38. WELL OR SANITARY SYSTEM INSPECTIONS:** Seller shall obtain at Seller's expense a well
449    water test stating that the well delivers not less than five (5) gallons of water per minute and including a bacteria
450    and nitrate test and/or a septic report from the applicable County Health Department, a Licensed Environmental
451    Health Practitioner, or a licensed well and septic inspector, each dated not more than ninety (90) days prior to
452    Closing, stating that the well and water supply and the private sanitary system are in operating condition with no
453    defects noted. Seller shall remedy any defect or deficiency disclosed by said report(s) prior to Closing, provided that
454    if the cost of remedying a defect or deficiency and the cost of landscaping together exceed $3,000.00, and if the
455    Parties cannot reach agreement regarding payment of such additional cost, this Contract may be terminated by
456    either Party. Additional testing recommended by the report shall be obtained at the Seller's expense. If the report
457    recommends additional testing after Closing, the Parties shall have the option of establishing an escrow with a
458    mutual cost allocation for necessary repairs or replacements, or either Party may terminate this Contract prior to
459    Closing. Seller shall deliver a copy of such evaluation(s) to Buyer not less than ten (10) Business Days prior to
460    Closing.

461    _____ **39. WOOD DESTROYING INFESTATION:** Notwithstanding the provisions of Paragraph 12,
462    within ten (10) Business Days after the Date of Acceptance, Seller at Seller's expense shall deliver to Buyer a written
463    report, dated not more than six (6) months prior to the Date of Closing, by a licensed inspector certified by the
464    appropriate state regulatory authority in the subcategory of termites, stating that there is no visible evidence of
465    active infestation by termites or other wood destroying insects. Unless otherwise agreed between the Parties, if the
466    report discloses evidence of active infestation or structural damage, Buyer has the option within five (5) Business
467    Days of receipt of the report to proceed with the purchase or to declare this Contract null and void.

468    _____ **40. POST CLOSING POSSESSION:** Possession shall be delivered no later than 11:59 P.M. on the
469    date that is _____ days after the date of Closing ("the Possession Date"). Seller shall be responsible for all
470    utilities, contents and liability insurance, and home maintenance expenses until delivery of possession. Seller shall

X _Buyer Initial_ ___ X _Buyer Initial_ ___               _Seller Initial_ ___ _Seller Initial_ ___
_Address:_ 12430 S Moody AVE PALOS HEIGHTS IL 60463                  _v6.1_
_Page 11 of 13_

471 deposit in escrow at Closing with _____, [check one] [ ] one percent (1%)
472 of the Purchase Price or [ ] the sum of $ _____ to be paid by Escrowee as follows:
473 a) The sum of $ _____ per day for use and occupancy from and including the day after Closing to
474 and including the day of delivery of Possession, if on or before the Possession Date;
475 b) The amount per day equal to three (3) times the daily amount set forth herein shall be paid for each day after
476 the Possession Date specified in this paragraph that Seller remains in possession of the Real Estate; and
477 c) The balance, if any, to Seller after delivery of Possession and provided that the terms of Paragraph 21 have been
478 satisfied. Seller's liability under this paragraph shall not be limited to the amount of the possession escrow
479 deposit referred to above. Nothing herein shall be deemed to create a Landlord/Tenant relationship between the Parties.

480 X _MB_ _RB_ 41. "AS IS" CONDITION: This Contract is for the sale and purchase of the Real Estate in its "As
481 Is" condition as of the Date of Offer. Buyer acknowledges that no representations, warranties or guarantees with
482 respect to the condition of the Real Estate have been made by Seller or Seller's Designated Agent other than those
483 known defects, if any, disclosed by Seller. Buyer may conduct an inspection at Buyer's expense. In that event, Seller
484 shall make the Real Estate available to Buyer's inspector at reasonable times. Buyer shall indemnify Seller and hold
485 Seller harmless from and against any loss or damage caused by the acts of negligence of Buyer or any person
486 performing any inspection. **In the event the inspection reveals that the condition of the Real Estate is**
487 **unacceptable to Buyer and Buyer so notifies Seller within five (5) Business Days after the Date of Acceptance,**
488 **this Contract shall be null and void. Buyer's notice SHALL NOT include a copy of the inspection report, and**
489 **Buyer shall not be obligated to send the inspection report to Seller absent Seller's written request for same.**
490 **Failure of Buyer to notify Seller or to conduct said inspection operates as a waiver of Buyer's right to terminate**
491 **this Contract under this paragraph and this Contract shall remain in full force and effect.** Buyer acknowledges
492 that the provisions of Paragraph 12 and the warranty provisions of Paragraph 5 do not apply to this Contract.

493 _____ 42. SPECIFIED PARTY APPROVAL: This Contract is contingent upon the approval of the Real
494 Estate by _____
495 Buyer's Specified Party, within five (5) Business Days after the Date of Acceptance. In the event Buyer's Specified
496 Party does not approve of the Real Estate and Notice is given to Seller within the time specified, this Contract shall
497 be null and void. If Notice is not served within the time specified, this provision shall be deemed waived by the
498 Parties and this Contract shall remain in full force and effect.

499 _____ 43. INTEREST BEARING ACCOUNT: Earnest money (with a completed W-9 and other
500 required forms), shall be held in a federally insured interest bearing account at a financial institution designated
501 by Escrowee. All interest earned on the earnest money shall accrue to the benefit of and be paid to Buyer. Buyer
502 shall be responsible for any administrative fee (not to exceed $100) charged for setting up the account. In
503 anticipation of Closing, the Parties direct Escrowee to close the account no sooner than ten (10) Business Days
504 prior to the anticipated Closing date.

505 _____ 44. MISCELLANEOUS PROVISIONS: Buyer's and Seller's obligations are contingent upon the
506 Parties entering into a separate written agreement consistent with the terms and conditions set forth herein, and
507 with such additional terms as either Party may deem necessary, providing for one or more of the following [check applicable boxes]:

508 [ ] Articles of Agreement for Deed    [ ] Assumption of Seller's Mortgage    [ ] Commercial/Investment
509    or Purchase Money Mortgage    [ ] Cooperative Apartment    [ ] New Construction
510 [ ] Short Sale    [ ] Tax-Deferred Exchange    [ ] Vacant Land

X _MB_ X _RB_                     Seller Initial _RB_    Seller Initial _____
*Buyer Initial*   *Buyer Initial*                    
*Address:* 12430 S Moody AVE PALOS HEIGHTS IL 60463              v6.1
*Page 12 of 13*

511 THIS DOCUMENT WILL BECOME A LEGALLY BINDING CONTRACT WHEN SIGNED BY ALL PARTIES AND DELIVERED TO THE PARTIES OR THEIR AGENTS.

512 THE PARTIES REPRESENT THAT THE TEXT OF THIS COPYRIGHTED FORM HAS NOT BEEN ALTERED AND IS IDENTICAL TO THE OFFICIAL
513 MULTI-BOARD RESIDENTIAL REAL ESTATE CONTRACT 6.1.

514 _November 8, 2017_
515 Date of Offer                                    DATE OF ACCEPTANCE
516 X _Michel P. Barry_                              _Russell Brown, Trustee_
517 Buyer Signature                                  Seller Signature
518 X _Rita Barry_
519 Buyer Signature                                  Seller Signature
520 **MICHEL P. BARRY & RITA D. BARRY**              **ATTORNEYS FOR RUSSELL BROWN, CHAPTER 13 TRUSTEE**
521 Print Buyer(s) Name(s) [Required]               Print Seller(s) Name(s) [Required]
522 **10432 S. LAVERGNE AVE.**
523 Address                                          Address
524 **OAK LAWN              IL      60453**
525 City                    State       Zip          City                           State          Zip
526                         Rdkob63@sbcglobal.net
527 Phone                   E-mail                   Phone                          E-mail

528                         **FOR INFORMATION ONLY**
529 Kagan Real Estate, Inc.     60239                @properties              4420
530 Buyer's Brokerage           MLS #   State License # Seller's Brokerage     MLS #          State License #
531 10750 S. Ridgeland Ave  Worth       60482        1821 Benson    Evanston   60201
532 Address                 City        Zip          Address        City       Zip
533 Shirley Plotoski & Patricia Emery  601120 & 600537    Nick Patinkin   34059
534 Buyer's Designated Agent    MLS #   State License # Seller's Designated Agent  MLS #       State License #
535 (708) 448-6800                                   (847) 905-5232         (847) 763-0222
536 Phone                   Fax                      Phone                          Fax
537 piotroskis@yahoo.com                             nickpatinkin@atproperties.com
538 E-mail                                           E-mail
539
540 Buyer's Attorney            E-mail               Seller's Attorney              E-mail
541
542 Address         City        State   Zip          Address        City           State     Zip
543
544 Phone                   Fax                      Phone                          Fax
545 **SUPREME LENDING           630-423-3282**
546 Mortgage Company            Phone                Homeowner's/Condo Association (if any)  Phone
547 **JEFF BOCK                 630-291-6688 630-818-2340**
548 Loan Officer                Phone/Fax            Management Co./Other Contact            Phone
549 **Jeff.Bock@supremelending.com**
550 Loan Officer E-mail                              Management Co./Other Contact E-mail

551 | Illinois Real Estate License Law requires all offers be presented in a timely manner. Buyer requests verification that this offer was presented.
552 | Seller rejection: This offer was presented to Seller on _____, 20___ at ___: ___ A.M./P.M. and rejected on _____
553 | 20___ at ___: ___ A.M./P.M. _____ [Seller Initials]
554 © 2015, Illinois Real Estate Lawyers Association. All rights reserved. Unauthorized duplication or alteration of this form or any portion thereof is prohibited. Official form available at
555 www.reattorneys.org (website of Illinois Real Estate Lawyers Association). Approved by the following organizations: September 2015: Illinois Real Estate Lawyers Association • DuPage County Bar Association •
556 McHenry County Bar Association • Northwest Suburban Bar Association • Will County Bar Association • Belvare Board of REALTORS® • Chicago Association of REALTORS® • Heartland REALTOR®
557 Organization • Hometown Association of REALTORS® • Illini Valley Association of REALTORS® • Kankakee-Iroquois-Ford County Association of REALTORS® • Mainstreet Organization of
558 REALTORS® • North Shore-Barrington Association of REALTORS® • Oak Park Area Association of REALTORS® • REALTOR® Association of the Fox Valley, Inc. • Three Rivers Association of
559 REALTORS®

X _MB_  X _RB_
Buyer Initial    Buyer Initial                      Seller Initial _RB_    Seller Initial _____
Address: 12430 S Moody AVE PALOS HEIGHTS IL 60463                                         v6.1
Page 13 of 13

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21                                    EXHIBIT B

22

23

24

25

26

27

28



## More saving.
## More doing.<sup>SM</sup>

12000 S. CICERO
ALSIP, IL 60803 (708)2391873

```
6822  00004  14367    09/13/17  03:23 PM
CASHIER ANDREA

037000950486 BNTY6HRSAS <A>      15.97
    BOUNTY 6 HUGE ROLL SAS WHITE
073149123435 12QTPAIL <A>         1.97
    STERILITE 12QT SPOUT PAIL
731919245014 GMPC5PLTL/XL <A>     5.97
    GMPC REUSABLE LATEX GLOVES 5PK L/XL
071736010427 HH BRUSH <A>         4.47
    LIBMAN ALL PURPOSE HOUSEHOLD BRUSH
078291219265 CLR CLEANER <A>      4.27
    CLR BATH & KITCHEN CLEANER 26OZ
051131997660 RESPIRATOR <A>       8.47
    3M P95 ODOR VALVE RESPIRATOR M/L 2PK
039800083982 C 4 PACK BAT <A>     7.68
    ENERGIZER C 4 PACK
037000977995 FEBRZAE2AS <A>       4.97
    FEBREZE AIR EFFECTS 2-PACK LN
044600307053 CLEAN UP 32 <A>      3.47
    CLOROX COMMERCIAL CLEANUP 32OZ
054600105689 CLEANER <A>          3.29
    FANTASTIK CLEANER W/BLEACH 32OZ
012800524969 DIY3AAA HDLT <A>     9.97
    DIY 3AAA INDESTRUCT HEADLT TRAY
-----Consumer Cleaning Coupon Book------
781748088085 AIR MAGNET <A>
    8 OZ ODOR AIR MAGNET
    3@4.97                       14.91
    MAX REFUND VALUE $13.41/3
    $0.50 off Cleaning Supplies  -1.50

              SUBTOTAL           83.91
              SALES TAX           8.39
              TOTAL             $92.30
              HOME DEPOT         92.30
                                    TA
```

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22                                EXHIBIT C

23

24

25

26

27

28

*16-14640 Kerridan*



**GOT-JUNK?**
THE WORLD'S LARGEST JUNK REMOVAL SERVICE

**Job ID**
# 2341472

**Invoice**
**ID:INV-02704907**
**Date: 09/13/2017**

P.O. Box 585
Frankfort, IL 60423
Tel: 8154695581
Email: chicagosw@1800gotjunk.com

*Make check to 1-800-GOT Junk*

## CONTACT DETAILS

| PICKUP CONTACT | BOOKED BY | BILLED TO |
|---|---|---|
| Nick Patinkin<br>Attorneys for Russell Brown,<br>Chapter 13 Trustee<br>12430 South Moody<br>Avenue<br>Palos Heights, IL 60463<br>Email:<br>nickpatinkin@atproperties.com | Nick Patinkin<br>Attorneys for Russell Brown,<br>Chapter 13 Trustee<br>12430 South Moody Avenue<br>Palos Heights, IL 60463<br>Email:<br>nickpatinkin@atproperties.com | Nick Patinkin<br>Attorneys for Russell Brown,<br>Chapter 13 Trustee<br>12430 South Moody Avenue<br>Palos Heights, IL 60463<br>Email:<br>nickpatinkin@atproperties.com |

## JOB DETAILS

| PRODUCT | QUANTITY | DESCRIPTION | PRICE |
|---|---|---|---|
| Standard Junk Removal Service | 1.00 | | $99.00 |

| Tax ID 2: 20-1377146



*PAID*
*9-18-17*
*CK# 30701*

| | |
|---|---|
| Subtotal | $99.00 |
| Tax | $0.00 |
| Total | $99.00 |



Tell your friends and colleagues how
good it feels to be junk-free!
Visit 1800gotjunk.com/referral

*RB*
*9/15/17*



1-800-GOT-JUNK? is committed to improving
our environmental performance. To learn more,
visit 1800gotjunk.com/environment

All accounts are due upon receipt unless credit has been established. Overdue accounts are subject to interest not higher than the maximum allowable interest rate as determined by law. As owner, agent, or tenant of the above location, you hereby agree the work has been satisfactorily completed and you understand and agree that you no longer own the items that have been removed.

# WasteBox, Inc.

11 S. 373 Jeans Rd., Lemont, IL 60439

1-800-499-4099

*16-14640*
*Kerridan*

# Invoice

| DATE | INVOICE # |
|------|-----------|
| 9/21/2017 | 116992 |

**BILL TO**

Attoneys For Russel Brown Chpt 13 Trustee
3838 N. Central Suite 800
Phoenix, AZ 85012

| P.O. NO. | TERMS |
|----------|-------|
|          |       |

| DROP DATE | TICKET # | QUANTITY | DESCRIPTION | DROP LOCATION | AMOUNT |
|-----------|----------|----------|-------------|---------------|--------|
| 9/18/2017 | 120465 | 1 | 16 YARD WASTE CONTAINER | 12430 S. Moody, Palos Hgts Illinois Nick Patinkin | 310.00 |

**PAID** *9-25-17* *CK# 30703*

| | **Total** | $310.00 |
|--|-----------|---------|

*ATTN. NICK PATINKIN*

# AAA AMERICAN CLEANOUTS
*Professional Removal Service*

27 Siems Drive ◦ Glendale Heights, IL 60139
(630) 768-8229  ◦  Fax: (630) 894-4206

**INVOICE**

| no. | 2388 |
| --- | --- |
| Date: | 9-29-17 |
| Account # | 847-204-9653 |
| FAX P.O. # | 847-763-0222 |

To: RUSSEL BROWN
CHAPTER 13 TRUSTEE
FOR. 12H 30 S MOODY
PALOS HILLS, IL

**Description:**

LABOR TO CLEAN OUT HOUSE $1,350
& GARAGE.

HAUL AWAY 3 LOADS OF DEBRIS 1,320

Remit payment to AAA American Cleanouts
27 Siems ◦ Glendale Heights, IL 60139

Kerridan 16-14640

$2670.00

**PAID**
(10-4-17)
ck# 30729

LOADS
LABOR

| | |
| --- | --- |
| Sub Total: | 1,320 00 |
| Extras: | $1,350 00 |
| Total: | $2,670 00 |

Please remit payment upon receipt